UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEROY E. WILLIAMS, | CV F   99 6523 OWW LJO P |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S RULE 12(b) MOTION TO DISMISS (Doc. 135.) |
| v. | |
| LEWIS, et.al., | |
| Defendants. | |

Leroy E. Williams ("Plaintiff") is a state prisoner proceeding in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**A. PROCEDURAL HISTORY**

Plaintiff filed the instant action on October 19, 1999.  Plaintiff filed an Amended Complaint on February 4, 2000, against Defendants Loo, Neubarth and Ortiz.  The Amended Complaint alleges that Defendants were deliberately indifferent to his medical needs in retaliation for his filing grievances against the medical department and staff.  (Amended Complaint at 5.)

On June 14, 2005, Defendants filed an Answer to the Amended Complaint.  (Doc.  14.) On June 28, 2000, the Court issued its scheduling Order setting forth a discovery deadline of

1

1 December 29, 2000, and a deadline for dispositive motions of March 2, 2001. (Doc. 23)

2       Both parties moved for Summary Judgment. (Docs. 37, 42.) On June 26, 2001, the Court issued two separate Recommendations: one recommending Plaintiff's Motion for Summary Judgment be denied and the other recommending that Defendant's Motion for Summary Judgment be granted on the Eighth Amendment claim against Defendant Lewis and denied with respect Defendant's assertion of qualified immunity. (Docs. 45, 46.) The District Court adopted both Findings and Recommendations on October 24, 2001, and Defendant Lewis was dismissed from the action. (Doc. 60.)

      On November 13, 2001, Defendants sought reconsideration of the Order adopting the Recommendations to deny in part and grant in part Defendant's Motion for Summary Judgment issued June 26, 2001. (Doc. 61.) The District Court referred the Motion to this Court for a Recommendation regarding the Motion for Reconsideration. (Doc. 75.) On June 5, 2002, this Court issued Findings and Recommendation that the Motion for Reconsideration be denied. The District Court adopted the Findings and Recommendations on June 27, 2002. (Docs 78, 84.) On April 4, 2003, the District Court issued a subsequent Order "Adopting as Amended" the recommendation that the Motion for Reconsideration be denied. (Doc. 95.) Defendants filed an Appeal on May 2, 2003. (Doc. 97.) The Ninth Circuit affirmed the disposition of the District Court on February 26, 2004.[1] (Doc. 108.)

      The Court issued a Second Scheduling Order on September 2, 2004, setting the matter for a Telephonic Trial Confirmation Hearing on January 25, 2005 and trial before the Honorable Oliver W. Wanger on March 8, 2005. (Doc. 114.) On December 10, 2004, Defendants requested a ninety day extension of the telephonic hearing and trial dates. (Doc. 125.) The request was granted on January 10, 2005, and the telephonic trial confirmation hearing was set for April 13, 2005, at 8:30 a.m. before the undersigned, and Trial on May 17, 2005, at 9:00 a.m. before the Honorable Oliver W. Wanger. (Doc. 124.) On February 17, 2005, the District Court

---

[1] On January 17, 2002, this Court issued a Second Scheduling order setting the matter for a Telephonic Trial Confirmation hearing before this Court on April 5, 2002, and trial before Judge Wanger on June 11, 2002. (Doc. 67.) However, this order was vacated on February 12, 2002. (Doc. 70.)

1  also granted the request for a ninety day extension and further postponed the trial date to June 28,
2  2005. (Doc. 126.)  The District Court then set aside its Order of February 17, 2005, leaving the
3  trial date of May 17, 2005, effective. (Doc. 127.)
4        On April 4, 2005, the Court issued a Pretrial Order. (Doc. 129.) A Telephonic Trial
5  Confirmation Hearing was held on April 13, 2005, at 8:30 a.m. before the undersigned.  The
6  Court set a deadline for the parties to exchange medical documentation and to allow for
7  Defendants to depose Plaintiff.  Defendants indicated their desire to file an unenumerated 12(b)
8  Motion to Dismiss for Plaintiff's alleged failure to exhaust his administrative remedies.  The
9  Court noted that the dispositive Motion deadline had expired and instructed Defendants to seek
10 relief from the deadline in the appropriate manner should Defendants wish to file a Motion to
11 Dismiss.
12       On April 26, 2005, the parties filed a stipulation allowing Defendants to file a Motion to
13 Dismiss. (Doc. 133.) A Motion to Dismiss was filed on May 13, 2005. (Doc. 125.) On June
14 1, 2005, Plaintiff filed an Opposition to the Motion to Dismiss. (Doc. 137.) Defendants filed a
15 Reply to the Opposition on June 13, 2005. (Doc. 138.)

16 **B. STANDARD OF REVIEW**

17       Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be
18 brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by
19 a prisoner confined in any jail, prison, or other correctional facility until such administrative
20 remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The section 1997e(a)
21 exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 435
22 U.S. 516, 532 (2002). Prisoners must complete the prison's administrative process, regardless of
23 the relief sought by the prisoner and regardless of the relief offered by the process, as long as the
24 administrative process can provide some sort of relief on the complaint stated. Booth v. Churner,
25 532 U.S. 731, 741 (2001). "All 'available' remedies must now be exhausted; those remedies
26 need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534
27 U.S. at 524 (*citing* to Booth, 532 U.S. at 739 n.5).
28       According to the Ninth Circuit, there are two principal policies behind the administrative

exhaustion rule: The first is to protect an administrative agency's authority by giving the agency the first opportunity to resolve a controversy before a court intervenes in the dispute. Ngo v. Woodford, 403 F.3d 620, 624 (9th Cir. 2005). The second is to promote judicial efficiency by either resolving the dispute outside of the courts, or by producing a factual record that can aide the court in processing a plaintiff's claim. Id. Thus, exhaustion must occur prior to filing suit and Plaintiff may not exhaust while the suit is pending. McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

The California Department of Corrections has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084, et seq. "Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy which they can reasonably demonstrate as having an adverse effect upon their welfare." Id. at 3084.1(a). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." Cal. Code Regs. tit 15, § 3084.5 (2004).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Wyatt, 315 F.3d at 1119 (*citing* Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (*per curiam*)). In resolving a Motion to Dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. If the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

**C. ANALYSIS**

Defendants allege that Plaintiff has failed to exhaust his administrative remedies with respect to the allegations that Defendants were deliberately indifferent to his medical needs in retaliation for filing grievances against medical staff. Defendants state that Plaintiff concedes, in

his Amended Complaint, that he did not need to exhaust because he was seeking monetary relief.[2] In support of the allegation that Plaintiff did not exhaust, Defendants also submit documentary evidence that Plaintiff, while detained at Pleasant Valley State Prison ("PVSP"), grieved to the Director's level on only three occasions, all which occurred *after* Plaintiff had already initiated the instant action. (Decl. Grannis, ¶ 4; Exh. A, Motion.)

In Institutional Log No. PVSP-C-00-00319, filed on February 2, 2000, Plaintiff alleged that on February 17, 2000, Officer Story wrongly confiscated an egg crate mattress and cervical collar from his cell.[3] (Exh. B, Motion to Dismiss.) This appeal was ultimately resolved on January 9, 2001. (Exh. A, Grannis Decl.)

In Institutional Log No. 01-01206 dated July 18, 2001, Plaintiff completed a Reasonable Modification or Accommodation Request form and requested that he be transferred to California Men's Colony ("CMC") East because he required "skilled nursing" for his chronic pains and conditions. (Exh. B, Motion.) This appeal was resolved on October 18, 2001. (Exh. A, Grannis Decl.)

In Institutional Log No. 02-00879 dated April 16, 2002, Plaintiff again requested transfer to the CMC medical facility for a "new" confidential summary of his medical status and to be enrolled in the "chronic care" program for pain control. (Exh. C, Motion.) This appeal was resolved on September 20, 2002. (Exh. A, Grannis Decl.)

Defendants also present evidence that on May 15, 1999, Plaintiff authored an inmate appeal wherein he again requested to be transferred to CMC for his medical conditions. (Exh. E, Motion.) An examination of this appeal shows that Plaintiff initiated this appeal with the intention of obtaining a transfer. Defendant's note that the appeal makes no mention of any acts or omissions on the part of Drs. Loo, Neubarth or Ortiz at either the informal or first formal

---

[2] The holding of Rumbles v. Hill, 182 F.3d 1064 (9th Cir.1999) that required exhaustion of administrative remedies only when the relief sought could be granted by the prison, was specifically overruled by Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

[3] It is noted in the First Level Appeal Response that Plaintiff conceded, in a second interview, that he obtained the egg crate mattress from an inmate who was transferred rather than it being "authorized" as Plaintiff alleged. (Exh. B, Motion.)

5

levels of the appeal. It is only at the Second Level that Plaintiff alleges that Dr. Loo took his cane and cancelled his request for an MRI in retaliation of his filing the 602. Defendants argue that Plaintiff never pursued this allegation to the Director's level and thus, the instant action must be dismissed.

Defendants have met their burden as the parties moving for dismissal for failure to exhaust. The burden now shifts to Plaintiff to demonstrate that he satisfied the exhaustion requirement set forth in Section 1997e(a).

In his Opposition, Plaintiff alleges that he did, in fact, exhaust his administrative remedies with regard to his demands for medical treatment and that Plaintiff, to date, has not received adequate treatment. Plaintiff further asserts that Defendants should be estopped from pleading exhaustion because Plaintiff was warned on two occasions that his pursuit of inmate appeals regarding the medical conditions at PVSP could get him in "trouble." Thus, Plaintiff did not exhaust for fear of retaliation. Plaintiff further asserts that "special circumstances" exist warranting this Court's denial of Defendant's Motion to Dismiss. Specifically, Plaintiff asserts that administrative remedies are no longer available to Plaintiff because any appeal submitted would be deemed untimely. Plaintiff contends, the lawsuit should proceed.

The Court has examined Plaintiff's response to Defendant's allegation and evidence and finds that Plaintiff fails to demonstrate that he has exhausted his administrative remedies or that exhaustion should be excused.

The allegations at issue in the Amended Complaint are that Defendants Loo, Neubarth and Ortiz were deliberately indifferent to Plaintiff's medical needs in retaliation for Plaintiff's exercising his right to file an inmate appeal. In order for Plaintiff to sufficiently demonstrate that he exhausted his administrative remedies with respect to his claim, Plaintiff must demonstrate that he grieved the fact that Defendant's knew of and disregarded a serious risk to his health in retaliation for his filing administrative grievances.

In this case, the only grievance filed by Plaintiff within the relevant time frame was that initiated on March 15, 1999. However, a close examination of that shows that Plaintiff merely requested a transfer to CMC. (Exh. E, Motion.) As noted by Defendants, nowhere in the inmate

1 appeal at either the informal or the first formal levels does Plaintiff complain that Defendants
2 were deliberately indifferent to his medical needs and that it was in retaliation for his filing
3 inmate appeals. Plaintiff makes reference to the confiscation of his cane by Dr. Loo only at the
4 Second Level. Id. Defendant's assert that Plaintiff's allegation was in response to the denial of
5 his appeal by Dr. Loo. The evidence in the record lends support for this conclusion. As stated
6 above, this inmate appeal was initiated on March 15, 1999. Id. The denial at the first formal
7 level occurred on July 20, 1999. Id. The date that Plaintiff alleges that Dr. Loo retaliated
8 against him is July 10, 1999, *after* the initiation of the inmate appeal and prior to the denial of the
9 appeal at the first formal level.[4] Thus, it is clear that Plaintiff's initiation of this inmate grievance
10 was not for the purpose of grieving any acts of retaliation by Dr. Loo or any of the other named
11 Defendants.

12 Even assuming that Plaintiff can supplement his appeal with new issues at the Second
13 Level, Plaintiff did not pursue the appeal to the Director's level. While it is true that in some
14 instances, a Director's Level decision is not necessary for exhaustion, such instances generally
15 involve the granting of an inmate appeal at a lower level. See Clement v. California Dept. of
16 Corr., No. C 00-1860 CW, 2002 WL 31050915, *5 (N.D. Cal. Sept. 9, 2002); Brady v. Attygala,
17 196 F.Supp.2d 1016, 1019 (C.D. Cal. Apr. 17, 2002); Gomez v. Winslow, 177 F.Supp.2d 977,
18 985 (N.D. Cal. Aug. 28, 2001). However, no grant of Plaintiff's appeal occurred whatsoever
19 and even had there been, the basis would be questionable as Plaintiff did not raise the retaliation
20 issue until the Second Level of the appeal.

21 Finally, Plaintiff failed to exhaust his administrative remedies with respect to Defendants
22 Neubarth and Ortiz altogether as there is no evidence before the Court that Plaintiff ever raised

---

[4] Although Plaintiff does not specify the date that Dr. Loo allegedly confiscated his cane in his Amended Complaint, Plaintiff states specifically in the original Complaint that his cane was taken away from him on July 10, 1999. (Complaint at 5.) Accordingly, the Court takes judicial notice of the date of the occurrence at issue in this action and against Dr. Loo. The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir.); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989); Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th Cir. 1980).

his retaliation claims against them in any inmate appeal.

The Court further rejects Plaintiff's assertions that Defendant's "impeded" Plaintiff from filing inmate grievances or that such impediments constitute "special circumstances" warranting excusing exhaustion.

First, Plaintiff's allegation that he did exhaust his remedies three times with respect to his demands for adequate medical care is irrelevant to the issue at hand. The issue here is not whether Plaintiff exhausted his remedies with regard to his attempts to get what he deemed was "adequate medical care," but whether he exhausted regarding his deliberate indifference in retaliation claims against the named Defendants.

Second, Plaintiff has set forth no argument, supported by evidence or other, that any Defendant or any particular staff member precluded him from grieving his retaliation claim. See McNair v. Jones, 2002 WL 31082948, at *8 (S.D.N.Y.2002) (case in which plaintiff did not suggest that prison employees prevented him from filing a grievance was distinguishable from those cases in which exhaustion was excused because the inmates made reasonable efforts to exhaust but were prevented from doing so by prison employees). As noted by Defendants, this contention is raised for the first time in Plaintiff's Opposition to the Motion to Dismiss. However, in the Amended Complaint, Plaintiff states that he did not exhaust because he was seeking monetary damages and was not required to. Even assuming Plaintiff feared retaliation and therefore did not exhaust his remedies, a general fear of retaliation is not an exception to the PLRA's exhaustion requirement." Hines v. Valhalla County Corr., 2002 WL 1822740, * 2 (S.D.N.Y.2002).

Further, as noted by Defendants, Plaintiff's record of filing appeals belies his contentions of fear. According to the Inmate Appeals Branch computer printout report, following the July 10, 1999, incident, Plaintiff filed and exhausted (per CDC standards), five appeals. (Exh. A, Grannis Decl.) According to the "Appellant Screenout Query," Plaintiff submitted ten (10) separate appeals that were screened out. Id.

Finally, Plaintiff's contention that the case should proceed because any administrative grievances are now unavailable to him fails. Plaintiff states that the 15 working days time frame

1  for filing an appeal under the California Code of Regulations, necessarily renders any appeal by
2  Plaintiff untimely, and therefore, unavailable.
3       In <u>Ngo v. Woodford</u>, 403 F.3d 620 (9th Cir.2005), the Ninth Circuit held that the denial
4  of an inmate appeal as untimely renders the administrative process unavailable for exhaustion
5  purposes. <u>Ngo v. Woodford</u>, 403 F.3d 620 (9th Cir.2005).  However, <u>Ngo</u> is distinguishable
6  from the case at hand.  Unlike Ngo, who sought review of his appeal to the Director's level and
7  where it was denied as untimely, Plaintiff deliberately bypassed the administrative process
8  without giving it a chance to work.  The Court in <u>Ngo</u> noted that even where an inmate wished to
9  skip the grievance system, the inmate "must still submit his untimely grievance to the prison and
10 appeal all denials of his claims completely through the prison's administrative process to satisfy
11 the PLRA's exhaustion requirement."  <u>Ngo</u>, 403 F.2d at 629.  Plaintiff's allegations that his
12 appeals at this time would be denied is speculative as it "is for the prison to decide whether to
13 exercise its discretion and accept or refuse the opportunity to hear the case on the merits
14 regardless whether the grievance is timely filed."  <u>Id</u>.  Because Plaintiff has not afforded the
15 prison the opportunity to exercise its discretion, it cannot be said that his appeals process is
16 unavailable such that exhaustion has occurred.
17       Accordingly, based on the above, the Court concludes that Plaintiff has failed to exhaust
18 his administrative remedies and the Court will RECOMMEND that the Motion to Dismiss be
19 GRANTED.  This Recommendation does not forever terminate Plaintiff's ability to seek redress
20 for the wrongs he allegedly suffered.   Plaintiff may return to court to file a new action and
21 pursue his legal remedies *after* he exhausts his administrative remedies, subject to any applicable
22 statute of limitations or other defenses.

**D. RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the Motion to Dismiss the case based on Plaintiff's failure to exhaust be GRANTED and the case DISMISSED.

These Findings and Recommendations are ORDERED submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636

(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within TEN (10) <u>court</u> days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 26, 2005**          **/s/ Lawrence J. O'Neill**
b9ed48                      UNITED STATES MAGISTRATE JUDGE